# MAY, 1943

CITY OF MINERAL WELLS V. HONORABLE ATWOOD MCDONALD,
CHIEF JUSTCE, ET AL.

No. 8037. Decided April 7, 1943.
Rehearing overruled May 5, 1943.
(170 S. W., 2d Series, 466.)

*W. O. Gross,* of Mineral Wells, for relator.

*Grindstaff, Zellers & Hutcheson,* of Weatherford, for respondents.

MR. JUSTICE SHARP delivered the opinion of the Court.

This is an application by the City of Mineral Wells, a municipal corporation, located in Palo Pinto County, Texas, for a writ of mandamus to compel the Court of Civil Appeals at Fort Worth to certify the following question of venue:

"Did the District Court of Parker County err in overruling the plea of privilege of the City of Mineral Wells in this suit which is based upon a trespass claimed to have been committed by officers of the United States Government in Parker County when the undisputed proof showed that no officer or agent of the city participated in the acts of trespass and that the city did no more than to obtain at the instance of the Government a lease upon said land?"

The pertinent facts in the case are these: Ralph K. Alexander, Miss Maida Alexander, a feme sole, and H. H. Chambers, plaintiffs, filed suit in Parker County, Texas, against the City of Mineral Wells, a municipal corporation, located in Palo Pinto County, Texas, for trespass upon property belonging to plaintiffs in Parker County, and for damages to plaintiffs' peach orchard occasioned by such trespass. We quote from the opinion of the Court of Civil Appeals the following statement: "From the record it appears that W. E. Spurgeon is the fee owner of a 25-acre tract of land in Parker County, Texas, and R. E. Spurgeon is the fee owner of a 15-acre tract in the same county. In February of 1938, these two tracts of land were leased by the respective owners to the plaintiffs for a term of ten years, for the purpose of planting and cultivating peach orchards thereon. The leases were duly recorded in the deed records of the county in June of the same year.

"The plaintiffs planted peach trees on the land and were in possession when the leases hereinafter mentioned were executed.

"In December of 1940, each of the Spurgeons executed a lease of his tract of land to the City of Mineral Wells. It is not disputed that the purpose of the City of Mineral Wells in assembling these and other leases was to provide an area for the use of the United States Army as a bivouac and training area and target range, near the campsite of Camp Wolters. The City of Mineral Wells in turn executed a lease to the United States government, covering this land and several thousand acres of other land, for the use mentioned. It can reasonably be inferred from the testimony that the government of the United States took possession of the land under and by virtue of the so-called 'master lease' it had received from the City of Mineral Wells.

"Plaintiffs offered evidence to show that the United States authorities had fenced his (their) land, and had taken possession of it, and were using it as a target range, and that plaintiffs as a result had been excluded from the leased land and had been unable to cultivate the orchard or gather any fruit from the trees.

"Plaintiffs sued the City of Mineral Wells for damages, seeking to recover what they alleged to be the profits they had lost and would lose as a result of not being able to cultivate the orchard and gather and sell the fruit. The Spurgeons were made parties to the suit, but no recovery of any kind was sought against them. Plaintiffs did not sue the United States.

"The City of Mineral Wells filed its plea of privilege, seeking to remove the cause to Palo Pinto County. Plaintiffs controverted the plea, seeking to maintain venue in Parker County, where the suit was filed, under Section 14, Article 1995, R. C. S., on the ground that the suit was one to recover damages to land, and under Section 9, on the ground that the defendant had committed a trespass in Parker County."

At the hearing on the plea of privilege the various leases were introduced in evidence, as well as a letter from the United States Army representative, answering certain questions that might arise in the minds of owners of the land on which the Government desired a lease, and stating that because of the emergency and lack of time and sufficient personnel the Government needed the assistance of the City of Mineral Wells in procuring the leases. We quote from the letter the following pertinent statements:

"Therefore, the Government is demanding that this detailed work of obtaining the leases and paying the rentals to the numerous landowners be performed by the City of Mineral Wells, through the Commission, and various committees. A Master Lease will then be made by the Government with the City of Mineral Wells. The Government will make its remittances to the City each quarter and the City will distribute the rentals among the landowners.

"* * * Proper training can only be accomplished with the proper training grounds and aids. I assure you that the unselfish and patriotic assistance given by the City, the various landowners and yourself is sincerely appreciated."

There was no evidence to the effect that the City of Mineral Wells did anything more than take the leases from the various landowners of the land desired by the Government, and make the master lease to the United States Government covering all the acreage. The City of Mineral Wells carried out the demands of the United States Government, obtained the leases as requested, and executed to the United States Government a master lease covering some 7,780 acres of land, which included the Spurgeon tract. The master lease contained the following provision:

"The Government hereby agrees that the lessor shall have the right on each Saturday and Sunday, with the permission of the Camp Commander, and at various other days during the week, to be designated by the Camp Commander of Camp Wolters, when no firing will be in progress, to go upon their respective

premises and gather fruits, crops and pecans, and attend to such other matters as they may choose, including the right to remove any of their improvements now on the premises. They shall be permitted, during the summer of 1941 to harvest small grain crops now growing upon the lands, and the Camp Commander at Camp Wolters shall arrange and designate appropriate periods of time for such harvesting when there shall be no firing upon the area included in this lease."

The trial court overruled the plea of privilege. On appeal the Court of Civil Appeals affirmed the judgment of the trial court. 163 S. W. (2d) 721.*

■ Our courts have repeatedly held that the dominant purpose of venue statutes is to give a person who has been sued the right to defend such suit in the county of his domicile, except under well-defined exceptions. Meredith v. McClendon, C. J., 130 Texas 527, 111 S. W. (2d) 1062, and cases cited. Among the exceptions authorizing the filing of a suit against a person outside the county of his domicile are found Subdivision 9 and 14 of Article 1995, which read as follows:

"9. Crime or trespass.—A suit based upon a crime, offense, or trespass may be brought in the county where such crime, offense, or trespass was committed, or in the county where the defendant has his domicile."

"14. Lands.—Suits for the recovery of lands or damages thereto, or to remove incumbrances upon the title to land, or to quiet the title to land, or to prevent or stay waste on lands, must be brought in the county in which the land, or a part thereof, may lie."

To deprive a person of the right of trial in the county of his domicile, the case filed against him must clearly come within one of the exceptions found in the statutes. Coalson v. Holmes, 111 Texas 502, 240 S. W. 896; 43 Tex. Jur., p. 714.

We quote from 43 Tex. Jur., p. 735, sec. 22, the following:

"A 'trespass,' within the meaning of subdivision 9 of R. S. art. 1995, includes injuries to persons or property resulting

from wrongful acts, either wilfully inflicted or the result of affirmantive, active negligence upon the part of the wrongdoer, as distinguished from injuries that are the result of a mere omission of duty." See also Meredith v. McClendon, C. J., supra; Connor v. Saunders, 81 Texas 633, 17 S. W. 236; McCrary v. Coates, 38 S. W. (2d) 393.

We quote with approval that part of the opinion of the Court of Civil Appeals relative to Subdivision 14 of Article 1995 which reads as follows:

"We do not consider that the case falls within Section 14. The suit appears not to be for any damage done to the land, but for profits lost by reason of being excluded from the land. To bring the case within Section 14, the suit must be for an injury to the possession or to the freehold or estate. 43 Tex. Jur. 746; Knight v. Houston & T. C. R. Co., 93 Texas 417, 55 S. W. 558.

      \*     \*     \*     \*     \*     \*     \*

"Plaintiffs allege that the leases referred to constituted a cloud upon their title, but clearly the suit is not one of title, or to remove cloud from title."

The rule has been announced that a defendant can not be sued outside of the county of his domicile under Subdivision 9 of Article 1995, unless he has participated in a trespass in the county where the suit is filed. Brown Express, Inc. v. Arnold et ux, 138 Texas 70, 157 S. W. (2d) 138. It has ben held in a suit against a corporation, for injuries sustained in a collision between plaintiff's automobile and an automobile owned by the corporation, such suit having been brought in the county in which the collision occurred, and the corporation having filed a plea of privilege to be sued in the county of its domicile, that evidence that the trespass had been committed against the plaintiff in the county in which the collision occurred, and that the driver of the corporation's automobile was an employee of the corporation, did not meet the requirements of the venue statute authorizing suit to be brought in the county in which the collision occurred. It must be further shown that the act of the driver constituted a trespass, and that the driver was the agent of the corporation and was acting in the course of his employment as such agent when the trespass occurred. Brown Express, Inc. v. Arnold et ux, supra.

The case of McClanahan v. Stephens, 67 Texas 354, 3 S. W. 312, involved the liability of the vendor for the acts of the vendee

in cutting the timber on the land conveyed by the deed. This Court held that the mere sale of the land of itself was not sufficient to constitute a trespass by the vendor. In that opinion it was said:

"To render the appellants liable for the acts of their vendees, it must be made to appear that they acted in concert in doing the illegal act, or that the injury was the ordinary or natural result of some act which they did.

"If they knew that their vendees were engaged in the lumber business, and even supposed that they purchased the land for the purpose of using the timber on it in their mills, it can not be said that the sale of the land made by them, of itself, would ordinarily or naturally bring about the result now complained of."

In Restatement of the Law, Volume on Torts, Chap. 7, p. 363, sec. 158, subsection "i," it is said:

"i. Causing entry of a third person. If, by any act of his, the actor intentionally caused a third person to enter land, he is as fully liable as though he himself enters. Thus, if the actor has commanded or requested a third person to enter land in the possession of another, the actor is responsible for the third person's entry, if it be a trespass. This is an application of the general principle that one who intentionally causes another to do an act is under the same liability as though he himself does the act in question."

In order to maintain venue under Subdivision 9 of Article 1995, it is necessary for the plaintiff to both plead and prove that the crime, offense, or trespass was committed, and that it was committed in the county where the suit is pending. Compton v. Elliott, 126 Texas 232, 88 S. W. (2d) 91; Hooper v. Halsell (Civ. App.), 143 S. W. (2d) 228.

In the case of Waco Cotton Oil Mill of Waco v. Walker (Civ. App.), 103 S. W. (2d) 1071, 1072, Chief Justice Gallagher stated the rule in the following language:

"To sustain venue in a county other than the residence of the defendant on the ground that the cause of action asserted is based on a trespass, the plaintiff must show that the act complained of was committed in the county where such suit is pending, and that it was of such a nature as to constitute a trespass. Proof of the fact of the commission of the trespass is as

essential as proof of the place where it was committed. Such proof must therefore include evidence of each element of the trespass and must be such as would support a finding by the jury for the plaintiff on the issue. 43 Tex. Jur. p. 857, sec. 115. One of the essential elements of an action for trespass is the responsibility of the defendant for the injury or damage resulting therefrom. 5 Tex. Jur. p. 753, sec. 140."

The Court of Civil Appeals in its opinion said: "We have some difficulty in determining whether the pleading and proof show a trespass committed by the City of Mineral Wells, so as to bring the case within Section 9." However, the Court of Civil Appeals did hold that the District Court of Parker County had venue of the suit against the City of Mineral Wells.

■ We do not think that the execution and delivery of the lease by the City of Mineral Wells constituted a trespass that would justify the filing and maintaining of a suit against the City of Mineral Wells in Parker County. The facts of the case before us clearly reflect that the most the City of Mineral Wells has done is to give the United States Government leave to go on the land; and it served merely as a conduit from the fee owners to the United States Government, and has in no sense "commanded or requested" the United States Government to commit a trespass. It might be contended that in taking the leases and in making the master lease to the United States Government the City of Mineral Wells was acting as the agent of the United States Government, but it could not be logically contended that the United States Government was acting as the agent of the City of Mineral Wells.

Since we hold that no trespass was committed in Parker County by the City of Mineral Wells that would sustain venue in Parker County in a suit against the City of Mineral Wells, it is unnecessary to discuss the question whether the act of the City of Mineral Wells in making the lease was ultra vires, and, if so, whether such act was validated by Article 5248e, Revised Civil Statutes, effective April 22, 1941.

The proper answer to the question quoted above is "Yes." However, as it appears that the holding of the Court of Civil Appeals in this case is in conflict with the opinions of this Court and opinions of other courts of civil appeals on the venue question as above indicated, if the Court of Civil Appeals will reverse its holding in this case, and follow the rule announced in the cases above cited, the writ of mandamus is denied. Should

the Court of Civil Appeals adhere to its present holding, the writ of mandamus is granted, and the Court of Civil Appeals is directed to certify to this Court for decision the foregoing question.

Opinion delivered April 7, 1943.

Rehearing overruled May 5, 1943.