Edward J. SIMONS et al., Appellants.

v.

UNITED STATES of America et al., Appellees.

No. 25945.

United States Court of Appeals
Fifth Circuit.

June 25, 1969.

Rehearing Denied Aug. 5, 1969.

Frank Gibson, R. M. Helton, Donald E. Short, Wichita Falls, Tex., for appellants.

Clyde O. Martz, Asst. Atty. Gen., Land and Natural Res. Div., Raymond N. Zagone, William M. Cohen, Attys., Dept. of Justice, Washington, D. C., Melvin M. Diggs, U. S. Atty., Kenneth J. Mighell, Asst. U. S. Atty., Ft. Worth, Tex., for appellees.

Before JONES and COLEMAN, Circuit Judges, and CHOATE, District Judge.

JONES, Circuit Judge:

The appellants claim ownership of land which they assert to be in Wichita County, Texas, having the South bank of the Red River as its Northern boundary. The South bank of the Red River has been established as the boundary line between Texas and Oklahoma. The lands in Oklahoma, across the river North of the lands claimed by the appellants, are Indian lands, held by the United States as trustee for designated Indians.

Subsequent to the establishment of the boundary, a substantial body of land was built up by a slow process of accretion along the South bank of the river, adjoining the original boundary. The Red River thus acquired a new bank some distance North of the bank as it existed when the boundary was originally determined. Pursuant to leases made for the United States upon the accreted lands by personnel of the Interior Department, oil wells were drilled, oil production was had and royalties were paid. The appellants brought an action against the Interior Department, individuals who held executive or administrative positions in the Interior Department, the lessees in the oil leases and the oil company which purchased the oil. In this action the appellants sought injunctive relief to restrain further oil production operations and against interference with their title, for damages and for termination of the leases. The district court determined that it was without jurisdiction and dismissed the action. This Court affirmed. Simons et al. v. Vinson, 5th Cir. 1968, 394 F.2d 732, cert. denied, 393 U.S. 968, 89 S.Ct. 398, 21 L.Ed.2d 379.

The appellants brought another action naming the United States as defendant based upon substantially the same allegations of fact and seeking damages measured by the value of the oil royalties or the value of the oil produced and other damages. The Federal Tort Claims Act.[1] was asserted as a basis for jurisdiction. The appellants did not, nor do we, think it is essential that they should attempt to pigeonhole their claim into any of the common law tort actions.

The district court in its judgment dismissing the complaint and the action concluded that the Tort Claims Act did

1. 28 U.S.C.A. § 1346(b).

not operate as a waiver of the sovereign immunity of the United States or authorize the maintenance of an action to recover upon the facts alleged in the complaint. The cause is before us on appeal from that judgment.

It is asserted that the alleged actionable wrong was committed upon land situated in the State of Texas. Unless it is so situated, there could not be any recovery. Whether the land is in Texas or in Oklahoma has not been decided and is not here decided. If it be in Texas, the law of Texas would be applied in determining whether the facts alleged set forth a cause of action sounding in trespass.

Assuming for the moment that there was a trespass, the threshold issue is to determine whether the Federal Tort Claims Act was intended to include recovery in damages for trespasses of the United States. We conclude that it was. From the decision of the Supreme Court in Hatahley v. United States, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065, we learn that the enactment in 1946 of the Tort Claims Act was written broadly to permit recovery against the United States for trespass. In noting that the Act authorizes suits against the Government for trespass, the Court said:

> "We note also that § 1346(b) provides for liability for 'wrongful' as well as 'negligent' acts. In an earlier case the Court has pointed out that the addition of this word was intended to include situations like this involving ' "trespasses" which might not be considered strictly negligent.' Dalehite v. United States, 346 U.S. 15, 45, 73 S.Ct. 956, 97 L.Ed. 1427." 351 U.S. 173, 181, 76 S.Ct. 745, 751.

Hatahley was concerned with Government agents, acting to enforce the Taylor Grazing Act, who wrongfully seized and destroyed or sold a large number of horses and burros owned by the plaintiffs who were Indians, claiming that this stock was unlawfully grazing on a Federal range. The Court held that the Government was liable for these tortious acts in the nature of trespass and affirmed a recovery against the Government for the wrongs so committed.

However, even prior to the decision of the Supreme Court in Hatahley, and its decision in Dalehite v. United States, supra, on which Hatahley is based in part, the Tort Claims Act had been held to extend to causes in the nature of trespass. United States v. Gaidys, 10th Cir. 1952, 194 F.2d 762; Lemaire v. United States, D.Mass.1948, 76 F.Supp. 498. The Tenth Circuit in Gaidys, supra, allowed a suit against the United States on the theory of trespass for damages suffered by the crash of an Air Force jet plane on privately owned property.

Recently, more courts have recognized that actions sounding in trespass may be brought under the Tort Claims Act. Anderson v. United States, E.D.Pa.1966, 259 F.Supp. 148; Ira S. Bushey & Sons, Inc. v. United States, E.D.N.Y.1967, 276 F.Supp. 518, aff'd on other grounds, 2nd Cir. 1968, 398 F.2d 167. The *Anderson, supra,* case is especially interesting because it presents a factual setting somewhat analogous to our present situation. In Anderson, the United States, through the Army Corps of Engineers, hired an independent contractor to conduct dredging operations. The independent contractor entered upon the claimant's land, without permission, and dug several ditches and deposited the mud and silt from the dredging operation. The claimant filed an action against the United States under 28 U.S.C.A. § 1346(b). In reply the Government contended that it was not responsible for the trespass of its independent contractor and that it mistakenly believed that it had obtained an easement to enter the land. The Court had no trouble concluding that a continuing trespass was committed by both the United States and its independent contractor. See 259 F.Supp. at 150. Such a tort it found to be actionable under the Tort Claims Act. In addition the Court stated:

> "The liability of the employer arises not from the manner in which the

work is done, but from the plain fact that ' * * * the thing contracted to be done causes the mischief.' Bonaparte v. Wiseman, 89 Md. 12, 42 A. 918, 919, 44 L.R.A. 482 (Md.1899).

" 'Whatever is done by the contractor in pursuance of the plans and specifications which form a part of the written contract is manifestly to be considered a result of the contract for which the employer is responsible.' 27 Am.Jur., Independent Contractors, § 41.

"Neither Norfolk nor the United States can escape liability because their trespass was done under a mistaken belief that entry was permissible.

" 'At common law, with certain minor exceptions not important here, any interference with possession is an act which will entitle the injured party to bring an action in tort. The fact that the act is done accidentally or in good faith or under justifiable error is no defense.' Ure v. United States (two cases) 93 F.Supp. 779, 787 (D.Or. 1950).

"The defendants' liability to plaintiff in this action does not depend on negligence or upon any inter se misrepresentation of defendants, but squarely upon the joint continuing trespass committed by Norfolk and the United States for which both are answerable to the plaintiff." Anderson v. United States, 259 F.Supp. 150.

Further support of our conclusion that actions in trespass are actionable under the Tort Claims Act can be found in Jayson, Handling Federal Tort Claims, § 212.02, p. 9–8, where the author states:

"It is well-settled that a damage claim based on trespass to land or to chattels is actionable under the Tort Claims Act. Thus, the Government has been held liable on the theory of trespass for interfering with the waters of a well on a claimant's property; for permitting a plane to crash on a claimant's land; for low-altitude flights over a claimant's property; and for the acts of government agents in confiscating and destroying claimants' horses without lawful authority."

In its brief and in oral argument the United States argues that the relief sought would adjudicate title against the United States. This, it contends, cannot be accomplished without the United States consenting to having its title adjudicated. However, this argument fails to recognize that this suit is one for damages under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b).

Moreover, the discretionary function exception to the Tort Claims Act, 28 U.S.C.A. § 2680(a), which precludes recovery upon "[a]ny claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused," would be of no avail to the Government, if in fact a trespass was committed, since the Government has no authority or discretion over land not under its control. Hatahley v. United States, supra.

So far, we have been concerned only with whether an action is maintainable in trespass under the Tort Claims Act. We concluded that it was. But this conclusion does not resolve the appeal in favor of the appellants. Other issues remain.

In actions under the Tort Claims Act, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." Therefore, the issue before this Court is narrowed to the question as to whether under the facts alleged the lessor, in Texas, or an oil and gas lease of land which the lessor does not own or over which it has no legal control is liable in trespass to the real owner of the land for the acts of the lessee in drilling

for, producing and removing oil from the land pursuant to the provisions of the lease.

It is the rule in Texas that a lessor may be liable for the trespass of the lessee, depending upon the facts and circumstances of the case. In some situations recovery will be allowed against the lessor and in others it will be denied. City of Mineral Wells v. McDonald, 141 Tex. 113, 170 S.W.2d 466.[2] Among the decisions applying the law of Texas, perhaps the one most nearly in point factually to the case before this Court is Fenley v. Ogletree, Tex.Civ.App., 277 S.W.2d 135, where the issue was raised as to the liability of the grantor of a timber deed for the cutting and removing of timber by the grantee from land not owned by the grantor. The Texas court held the grantor liable on the principle that,

> "[O]ne who, without authority, assumes to sell timber on another's land, or the right to cut it, anticipating that such timber will be cut and intending that it shall be, is liable for the trespass of the purchaser in cutting it." 277 S.W.2d 135, 147.

Of prime consideration to the courts in Texas is the determination of whether the lessor and lessee "acted in concert in doing the illegal act, or that the injury was the ordinary or natural result of some act which they did." McClanahan v. Stephens, 67 Tex. 354, 3 S.W. 312, 313. In this connection, the Court in the *Fenley* case made the following appropriate observations:

> "The defendants Fenley and Faulkner executed and delivered the timber deeds above mentioned with the intent that they be relied upon and acted upon, and with the intent and in the expectation that entry would be made upon the land and that the timber which they authorized to be cut would in fact be cut and removed from the

land by their vendees or under their authority. They also intended and expected that the timber, once it had been severed from the land, would be converted to the use and benefit of their vendees, and that they themselves would benefit from the conversion. The trespasses and conversions that followed delivery of the deeds were not only the ordinary, natural, and probable consequences of the deeds, they were the expected and desired consequences. Furthermore, if it cannot be said that Fenley and Faulkner actually either requested or directed their vendees to cut, remove, and convert the timber, it can at least be safely said that they encouraged them to do so, and that the deeds were the procuring causes of the trespasses and conversions with which we are concerned. In addition, defendants Fenley and Faulkner, with full knowledge of the facts, accepted and retained a part of the money that was derived from sale of the timber; and in this sense and to this extent they approved and adopted as their own the acts of the actual trespassers and converters.

> "The foregoing considerations distinguish this case from the case of McClanahan v. Stephens, supra; and, under the rule we have stated, they, together with the facts of the case generally, clearly establish liability on the part of defendants Fenley and Faulkner for trespass. Also, we think the facts of this case are not distinguishable from those in Kolb v. Bankhead, supra, wherein a judgment against the vendor for his vendee's trespass was affirmed." 277 S.W.2d 135, 148.

In another Texas case, Brownlee v. Landers, Tex.Civ.App., 166 S.W.2d 734, 735, a landlord leased land to a tenant for farming. The tenant, however, farmed on more land than he leased. Subsequently, the landlord claimed the land the tenant had been farming

---

2. See also McClanahan v. Stephens, 67 Tex. 354, 3 S.W. 312; Kolb v. Bankhead, 18 Tex. 228; Brownlee v. Landers, Tex. Civ.App.1942, 166 S.W.2d 734, 735, and 56 Tex.Jur.2d Trespass § 11. Contra, Durham v. Scrivener, Tex.Civ.App.1923, 259 S.W. 606, (Dicta), aff'd. Tex.Com. App., 270 S.W. 161.

through adverse possession of his tenant. In discussing the law of trespass in Texas and how it relates to the landlord-tenant relationship, the court said:

"The law is established in this State, as well as in many other jurisdictions, that no act or trespass committed by a lessee will subject the lessor to liability or expose him to a suit for damages unless such acts are committed upon the premises included in the lease contract. If the lessee commits such trespass on land other than that included in his lease, such trespass is his own act for which he alone is liable. Williams v. Fuerstenberg et al., Tex.Com.App., 23 S.W.2d 305; Niendorff et al. v. Wood et al., Tex.Civ. App., 149 S.W.2d 161, and authorities there cited." 166 S.W.2d 734, 737.

From the foregoing, it appears that in Texas a lessor may be liable for the trespasses of his lessee when those trespasses occur on lands which are the subject of the lease under the circumstances and in the situations as outlined in the cited precedents. It is to be noted that the United States Supreme Court has recognized by reference that a lessor who leased lands it did not own was a trespasser. United States v. Wyoming et al., 331 U.S. 440, 67 S.Ct. 1319, 91 L.Ed. 1590.

The only question decided by the district court was whether it had jurisdiction. It was there decided that jurisdiction did not exist. It is our conclusion that the Federal Tort Claims Act confers jurisdiction and is a waiver of the immunity of the United States in cases such as the one presented. This action can succeed if, and only if, the land in question is in Texas and under the law of Texas is the property of the appellants. This and all other questions other than the question of the applicability of the Tort Claims Act to an action of trespass are for the determination initially by the district court.

The judgment before us on appeal is reversed and remanded for further proceedings.

Reversed and remanded.