**FIRST CITY MORTGAGE COMPANY et al., Appellants,**

v.

**Roy J. GATLING and Gatling Construction Company, Appellees.**

**No. 996.**

Court of Civil Appeals of Texas, Corpus Christi.

Nov. 26, 1975.

Rehearing Denied Dec. 17, 1975.

638

Ward Williford, Williford & Carlock, Dallas, for appellants.

Asa V. Bland, Atlas, Hall, Schwarz, Mills, Gurwitz & Bland, McAllen, for appellees.

## OPINION

NYE, Chief Justice.

This is a venue case. Roy J. Gatling and Gatling Construction Company, Inc., plaintiffs and residents of Cameron County, Texas, filed suit based upon a breach of a loan commitment contract against First Home Savings Association of Pittsburg, Pennsylvania and First City Mortgage Company of Dallas County, Texas (called defendant herein). Plaintiffs sought specific perform-ance of the commitment contract and in the alternative damages resulting from the alleged breach of the loan commitment contract made by First Home Savings Association (called First Home) through the defendant company. Only the defendant timely filed its plea of privilege to be sued in the county of its residence, that being Dallas County. Plaintiffs controverted the plea of privilege. The trial court overruled defendant's plea of privilege from which ruling the defendant has duly perfected its appeal to this Court.

In March 1970, the plaintiff Corporation commenced construction of what will be referred to as the Tulane Apartment Project located in Brownsville, Cameron County, Texas. At this time plaintiffs were in need of financing for the project and had contacted the defendant for assistance in this matter. Prior to contacting defendant, First Home had been in contact with defendant company informing them that they had funds available to loan. An agreement was then reached between First Home and the defendant on March 23, 1973, whereby plaintiffs obtained a commitment for permanent financing from First Home. First Home's principal place of business was in Pittsburg, Pennsylvania. First Home has no offices, agents or representatives within the State of Texas, nor a license to do business in this State.

The loan commitment was in the original amount of $650,000.00 with interest at the rate of 8¾% for a term of 27 years. A commitment fee of $6,500.00 was paid by plaintiff, Mr. Gatling, to First Home through the defendant. This original commitment was for a period of nine months and was to expire in January, 1974, with the closing of the loan to be on or before January 10, 1974.

At the time of the expiration of the original commitment (January 10, 1974), the apartment project had not yet been completed. Although the evidence is conflicting, during the months of January through April, the loan commitment was extended

on two or three more occasions and on at least a couple of these occasions there was another $6,500.00 paid by plaintiff Mr. Gatling for the privilege of receiving the extension of the loan commitment. After a renegotiation of the loan commitment between First Home and plaintiff on May 30, 1974, the amount of the commitment was reduced to $635,000.00 with the rate of interest increased to the current rate of 9¾%, with ⅛ of 1% to go to defendant for securing the loan. The commitment was for a 30 day period which was to expire on July 6th or 7th, 1974. As a condition to this renegotiation of the loan commitment, an additional loan commitment fee in the amount of $6,350.00 was paid to defendant by plaintiff Gatling.

On June 12, 1974, First Home wired the $635,000.00 to Cameron County Title Company to fund plaintiffs' loan. This was done as an accommodation to defendant as they requested that it be wired direct to the title company rather than having First Home wiring funds to them and First City then having to rewire them to the title company. The funds were kept by the title company during this time.

Plaintiff discovered through his superintendent just prior to closing that he had an overrun in excess of $200,000.00 of the cost of the anticipated budget for the project. After learning this, the plaintiff found that he would not have sufficient money for closing and thus sought a purchaser for the project so that he could get out of this financial dilemma. The plaintiff contacted a Mr. B. P. Newman, who was a prospective purchaser. After ensuing negotiations, a contract for sale was entered into between Gatling Construction Company, Inc. and B. P. Newman Investment Company for the purchase of the Tulane Apartment Project. The basis of the agreement was that Newman would assume plaintiffs' position. The property would be conveyed to Newman, subject to the loan and he (Newman) would provide the necessary funds to close.

Gatling and Newman approached defendant with this arrangement, but such an arrangement was not acceptable to the defendant. During these negotiations, First Home was unaware of the Newman prospective sale or the refusal of defendant to accept such an arrangement in order to close, nor were they made aware of the problems existing as to the closing.

On or about July 6, 1974, the loan commitment expired by its own terms without the loan having been closed. There was no further extension by First Home of the loan commitment. On July 10, 1974 (four days after the loan commitment had expired), defendant's attorney sent a letter to the Cameron County Title Company stating that it was his understanding that the parties were now ready for disbursement of the funds and that the title company was thereby authorized to make such disbursement. The closing still did not take place. On July 19, 1974, the president of First Home sent a telegram to the title company advising them that plaintiffs' commitment expired July 6, 1974, and they absolutely forbid the closing of the mortgage and distribution of the funds. First Home requested the immediate return of the funds. On or about August 1, 1974, the funds were wired back to First Home in Pennsylvania.

The plaintiffs then filed suit against the defendant First City and First Home alleging that they had breached their loan commitment contract with plaintiffs and therefore plaintiffs sought equitable relief in the nature of specific performance. In the alternative, plaintiffs sought damages for the fees paid for the commitment and the extension thereof in the total amount of $28,-850.00, damages for the wrongful breach of the commitment which prevented the sale to B. P. Newman resulting in damages in the sum of $115,000.00, and other relief.

The defendant filed its plea of privilege to be sued in Dallas County, the county of its residence. Plaintiffs controverted defendant's plea of privilege. The trial court found venue to be proper in Cameron County under Subdivision 5, Art. 1995 as to First Home and as to defendant First City under

Subdivision 29a, Art. 1995. The trial court held that defendant First City was a necessary party to plaintiffs' action against First Home. Defendant appeals from that ruling.

The defendant in its points of error claims that the trial court erred in overruling its plea of privilege because: 1) the defendant did not contract in writing to perform the alleged obligation sued on in a particular county, that county being Cameron, expressly naming such county, or a definite place therein (V.A.T.S.1995, Subd. 5); 2) that the defendant is not a necessary party to this suit because Gatling may obtain complete relief to which he may be entitled in this lawsuit under the facts of the case against First Home; that because First Home is properly sueable in Cameron County, both defendants are not needed in this suit to afford plaintiffs complete relief. (V.A.T.S.1995, Subd. 29a).

■ The courts in Texas have consistently held that a person's right to be sued in the county of his residence is a valuable right and should never be denied except upon clear and convincing proof that the alleged cause of action comes within an exception to Article 1995. *City of Mineral Wells v. McDonald*, 141 Tex. 113, 170 S.W.2d 466 (1943); *Shaw v. Allied Finance Company*, 161 Tex. 88, 337 S.W.2d 107 (1960); *Stanley v. Savage*, 489 S.W.2d 461 (Tex.Civ.App.—Corpus Christi 1972, no writ). The plaintiff has the burden to allege and prove the facts he relies upon to bring his case within an exception to the general rule. *Cowden v. Cowden*, 143 Tex. 446, 186 S.W.2d 69 (1945); *Stanley v. Savage*, supra; *Socony Mobil Company, Inc. v. Southwestern Bell Telephone Co.*, 518 S.W.2d 257 (Tex.Civ.App.—Corpus Christi 1974, no writ).

■ In order for the plaintiffs to maintain venue in Cameron County, Texas, under Subdivision 5, proof of the existence of a cause of action is not required. The single fact issue that plaintiff was required to prove was that the defendant First Home

contracted in writing to perform the obligation sued upon in the county of the suit and that such instrument of writing expressly named that county, or a definite place therein, as the place where the obligation was to be performed. *Petroleum Producers Co. v. Steffens*, 139 Tex. 257, 162 S.W.2d 698 (1942); *Vahlsing, Inc. v. Esco, Ltd.*, 496 S.W.2d 652 (Tex.Civ.App.—Corpus Christi 1973, writ dism'd). If the written instrument states a definite place where the contract is to be performed, such definite place may be identified as being located within a particular county by extraneous proof. *Burtis v. Butler Bros.*, 148 Tex. 543, 226 S.W.2d 825 (1950); *Vahlsing, Inc. v. Esco, Ltd.*, supra.

■ ■ In defendant's first point of error, it complains not of venue found under Subdivision 5 as to First Home which was the case here, but venue under Subdivision 5 found as to them, which was not the case. Defendant has mistakenly confused the proper position or operation of Subdivision 29a. Subdivision 29a never operates alone: it is invoked only when no other exception reaches the defendant urging his plea of privilege, but there is another defendant (not residing in the county of suit) against whom venue is demonstrably proper. 1 McDonald Texas Civil Practice, § 4.36 (1965). Instead of defendant's complaining that the trial court erred in finding venue in Cameron County as to them under Subdivision 5, the complaint should have been directed against the court's ruling of venue under Subdivision 5 as to First Home. This, they did not do. Therefore, if there be any error by the trial court in finding venue in Cameron County as to First Home under Subdivision 5, such error was waived as there is no complaint thereof.

■ It should be noted, however, that the court's ruling with respect to venue under Subdivision 5 as to First Home was correct. It is established by written evidence that the loan was to be closed at the Cameron County Title Company which is located in Brownsville, Texas. The title company had

control over the funds located in a Brownsville bank. The breach of the loan commitment contract by defendant First Home, if any, such as the failure to consummate the closing, occurred in Brownsville, Cameron County, Texas. Thus, plaintiffs established venue in Cameron County against First Home under Subdivision 5 of the venue statute.

■ Since the suit is lawfully maintainable as to one of the defendants (First Home) and there are two or more defendants, plaintiffs must also meet the other of the two requirements of Subdivision 29a; and that is whether defendant First City is a necessary party under Subdivision 29a to the suit. *Ladner v. Reliance Corporation,* 293 S.W.2d 758 (Tex.Sup.1956); *Loop Cold Storage Company v. South Texas Packers, Inc.,* 491 S.W.2d 106 (Tex.Sup.1973); *Weaver v. Acme Finance Company,* 407 S.W.2d 227 (Tex.Civ.App.—Corpus Christi 1966, no writ); *Stanley v. Savage,* supra; *Vahlsing, Inc. v. Esco, Ltd.,* supra.

■ To be a necessary party under Subdivision 29a, First City's joinder in the Cameron County suit must be necessary to afford plaintiffs the complete relief to which they are entitled under the facts of their case against First Home. *Loop Cold Storage Company v. South Texas Packers, Inc.,* supra; *Ladner v. Reliance Corporation,* supra; *Shaw v. Allied Finance Company,* supra; *Weaver v. Acme Finance Company,* supra. It was, therefore, incumbent upon plaintiffs not only to allege the facts which made defendant a necessary party to the suit within the meaning of Subdivision 29a, but to also prove by independent evidence all of such facts except those which are taken as admitted under the pleadings or which are established as a matter of law by the allegation of the petition. To do this, plaintiffs were required to prove that defendant had an interest in the subject matter of the suit against First Home which would be affected by any decree completely adjudicating the rights of plaintiffs and First Home or that no effectual

decree could be rendered between plaintiffs and First Home without defendant's joinder. *Ladner v. Reliance Corporation,* supra. See also *Loop Cold Storage Company v. South Texas Packers, Inc.,* supra; *Weaver v. Acme Finance Company,* supra. We hold that plaintiffs have met their burden.

The relief sought by plaintiffs is twofold. First, they sought equitable relief in the nature of specific performance requesting that First Home and defendant be required to specifically perform the loan commitment entered into by and between them. Second, plaintiffs sought recovery of damages for the wrongful breach of the loan commitment which included the amounts paid for the loan commitment fees and extension and damages resulting from the loss of the sale of the apartment complex to Mr. Newman.

■ The evidence clearly showed that defendant had a major role in the loan and its proposed closing. Mr. Richard H. Zehfuss, the executive vice president of First Home, testified that defendant's role was to handle the whole transaction. The defendant would be in charge of closing and disbursement of the funds in accordance with the terms of the commitment letter. Upon the loan being closed, defendant would have collected the monthly payments of principal and interest and in turn deducted a percentage for a fee of some nature and send the balance on to First Home. All legal work was to be done by the attorneys representing defendant company and forwarded to First Home's attorneys for their approval prior to the closing. In fact, defendant's involvement was readily evidenced by the fact that the defendant made the initial decision on whether or not the loan was to be closed without informing First Home of the $200,000.00 overrun and the arrangement entered into between Gatling and Mr. Newman, the prospective purchaser, which might have alleviated the problem encountered. In fact, a letter from First Home to defendant makes reference to this and First Home's contention that defendant is re-

sponsible for the failure of the deal to close. Said letter reads in part as follows:

"As you know our position is and has been that our commitment had expired when we requested the return of funds from the Title Company in Dallas. We had no information from you as to why the loan had not been closed and in fact, I called you Tuesday, Wednesday and Thursday prior to wiring the Title Company requesting the return of funds Friday. I received no return call until the week following and at that time you advised as to the $200,000.00 over run and Mr. Gatling's attempt to assign our commitment to other investors which you explained was not permitted under the terms of your agreement with Mr. Gatling.

Our Board and I feel we are in this suit through no fault of our own and frankly feel your firm should assume the responsibility for payment of legal fees."

This is some evidence of joint responsibility, First Home making the commitment and defendant handling the entire transaction. It follows then that if the remedy of specific performance as requested by plaintiffs was granted, defendant's joinder would be necessary since the trial court in decreeing this equitable relief would of necessity have to decree that certain acts on the part of the defendant company be carried out. This is true because defendant was to, and did up to a point, handle the entire transaction. We hold that defendant's joinder is necessary in order to afford plaintiffs the complete relief to which they are entitled under the facts of the plaintiffs' case against the defendant company. The trial court was correct in the overruling of defendant's plea of privilege.

There appears further reason why the judgment of the trial court was correct. Plaintiffs' alternative plea was for damages which included the loss of commitment fees and extension fees paid by the plaintiffs to the defendant company who in turn paid a portion over to First Home. The evidence shows that on one occasion when plaintiffs paid an extension fee of $6,500.00 to First City, half of such sum was retained by defendant and the balance was sent on to First Home. There appears to be joint liability then with the defendant and First Home each holding a portion of the funds that plaintiffs are attempting to recover. Since the defendant company is jointly responsible for such funds, it is a necessary party to the lawsuit. *Loop Cold Storage Company v. South Texas Packers, Inc.*, 491 S.W.2d 106 (Tex.Sup.1973).

The judgment of the trial court in overruling defendant's plea of privilege is affirmed.

Affirmed.