**WICHITA COUNTY, Texas, Appellant,**

v.

**Allen HART and Ernie Williams, Appellees.**

No. 3–93–358–CV.

Court of Appeals of Texas, Austin.

Oct. 12, 1994.

Rehearing Overruled Nov. 16, 1994.

Ann Clarke Snell, Bickerstaff, Heath & Smiley, Austin, for appellant.

R. John Cullar, Mills, Millar, Matkin & Cullar, Waco, John A. Crane, Zunker, Butler, Estes & Crane, L.L.P., Austin, for appellees.

Before POWERS, KIDD and B.A. SMITH, JJ.

KIDD, Justice.

Allen Hart and Ernie Williams ("appellees") filed suit against Wichita County ("the County") for wrongful termination pursuant to Tex. Gov't Code Ann. §§ 554.001–.009 (West 1994) (hereinafter "the Whistleblower Act").[1] The County filed a motion to transfer venue, which the trial court denied. After a jury trial in which the appellees prevailed, the County appeals. We will affirm.

## BACKGROUND

The appellees were employed as law enforcement officers in the Wichita County Sheriff's Department. In February 1989, appellee Hart became aware of some questionable activities occurring in the department. Hart consulted with appellee Williams about the legality of a proposed gun sale and a deed of property that a local law firm had transferred to the sheriff, and the two subsequently began investigating these transactions.

Hart eventually sought the advice of Mike Cross, an investigator with the District Attorney's Office, about the legality of these

---

1. Appellees' claim was brought under Tex.Rev. Civ.Stat.Ann. art. 6252–16a, which has since been repealed and codified into the Government Code. Act of May 22, 1993, 73d Leg., R.S., ch. 268, §§ 1 & 47, 1993 Tex.Gen.Laws 609, 986 (codified at Tex. Gov't Code Ann. §§ 554.001–.009 (West 1994)). Because no substantive changes have been made in the provisions at issue here, we cite the current code for the sake of convenience.

activities. Cross launched an investigation in order to determine whether the sheriff's department was violating any laws. During this same period, Williams reported his belief that criminal activities were occurring in the department to FBI Special Agent Lee Hale.

On May 1, 1989, Cross confronted Sheriff Callahan about the transfer of the deed. During that meeting it was revealed that the purpose of the deed transaction was to provide collateral so that the law firm could make bail bonds for its criminal defense practice. Sheriff Callahan demanded to know the identities of the complainants. Hart was terminated later that day; Williams was terminated two days later on May 3, 1989.

The appellees sued the County under the Whistleblower Act, contending that their positions as deputy sheriffs were terminated because they reported a superior's violation of the law. Appellees filed suit in Travis County pursuant to the special venue provision contained in the Whistleblower Act. Tex. Gov't Code Ann. § 554.007 (West 1994). The County filed a motion to transfer venue to Wichita County, contending that the mandatory venue provision of section 15.015 of the Texas Civil Practice and Remedies Code entitled the County to defend the suit in Wichita County. The trial court denied the County's motion to transfer venue.

The appellees prevailed at trial, obtaining a substantial jury verdict for their termination. The County appeals, raising ten points of error,[2] including a challenge to the trial court's denial of its motion to transfer venue. Because the County's venue challenge is a threshold issue, we address it first.

## DISCUSSION

### Venue

In its first point of error, the County contends that the trial court erred in denying its motion to transfer venue. If the trial court did err, we must reverse the judgment and remand the cause for a new trial. *See* Tex. Civ.Prac. & Rem.Code Ann. § 15.064(b) (West 1986).

Section 15.015 of the Civil Practice and Remedies Code mandates, "An action against a county shall be brought in that county." Tex.Civ.Prac. & Rem.Code Ann. § 15.015 (West 1986) (hereinafter "the county provision"). The special venue provision in the Whistleblower Act, section 554.007 of the Government Code, provides, "A public employee may sue under this chapter in a district court of the county in which the employee resides or in a district court of Travis County." Tex. Gov't Code Ann. § 554.007 (West 1994).

As a general rule, the plaintiff chooses venue. *Wilson v. Texas Parks & Wildlife Dep't*, 886 S.W.2d 259, 259–61 (1994). The defendant is entitled to have a motion to transfer venue granted in only two instances: (1) the plaintiff's choice of venue is not proper, meaning that no venue provision permits the case to be tried in the court where the plaintiff filed suit; or (2) a mandatory venue provision requires[3] that the case be brought in another court.[4] *See* Tex.R.Civ.P. 86(3). A defendant is not entitled to have venue transferred from one permissive venue to another permissive venue, and indeed, it is reversible error for a trial court to grant such a transfer. *Wilson*, 886 S.W.2d at 260–61. In the instant cause, appellees filed suit in Travis County, clearly a proper venue under the whistleblower special venue provision. The County contends, however, that the district court erred by not transferring the cause to Wichita County pursuant to the mandatory county provision.

---

2. In nine of its ten points of error, the County raises points of error regarding legal and factual sufficiency of evidence, denial of several jury instructions, application of the Whistleblower Act to the sheriff, and various provisions of our Texas Constitution.

3. Of course, a party may *waive* its right to mandatory venue if an objection is not made "by written motion filed prior to or concurrently with any other plea, pleading or motion except a special appearance motion provided for in Rule 120a." Tex.R.Civ.P. 86(1).

4. Either party may file a motion for *change* of venue, regardless of whether venue is proper where suit has been filed, if the party cannot obtain an impartial trial for one of three reasons stated under the rule or for good cause. Tex. R.Civ.P. 257.

The county provision has long been a part of the law of our state and has long been regarded as a mandatory venue provision:

> The first legislature of the state made it the law in Texas that all suits against a county shall be instituted in some court of competent jurisdiction within such county.... To this mandatory provision there seems to be no exception. It was originally enacted May 13, 1846,—two days before the passage of the general venue statute, with its 11 exceptions to the rule there promulgated....

*Montague County v. Meadows,* 31 S.W. 694, 694 (Tex.Civ.App.—Fort Worth 1895, writ ref'd) (citations omitted). Since its adoption, courts have consistently held that the county provision is a mandatory venue provision. One court explained that "counties are so closely identified with the sovereign power of the state that they may be sued only upon the terms and conditions prescribed by the statute." *Dial v. Crosby County,* 96 S.W.2d 534, 536 (Tex.Civ.App.—Amarillo 1936, no writ); *see also City of Tahoka v. Jackson,* 276 S.W. 662, 663 (Tex. Comm'n App. 1925, opinion adopted); *Randall County v. Todd,* 542 S.W.2d 236, 237 (Tex.Civ.App.—Amarillo 1976, no writ); *Hodges v. Coke County,* 197 S.W.2d 886 (Tex.Civ.App.—Amarillo 1946, no writ).

The legislature reaffirmed the holdings of these courts with its revision of the venue statute in 1983, placing the county provision in a subchapter of the Civil Practice and Remedies Code entitled "Mandatory Venue."[5] Thus, the district court was required to grant the County's motion to transfer venue to Wichita County unless the whistleblower provision is either jurisdictional or mandatory.

### Is the Whistleblower Venue Provision Jurisdictional?

 If a venue provision is jurisdictional, and suit is not filed in a proper court, the court in which the suit is improperly filed lacks the power even to transfer the cause to a court where venue is proper; the court must simply dismiss the cause. *Gambill v. Town of Ponder,* 494 S.W.2d 808, 810 (Tex. 1973); *Federal Underwriters Exch. v. Pugh,* 141 Tex. 539, 174 S.W.2d 598, 600 (1943). Furthermore, the parties may not waive a jurisdictional venue provision. The language of some venue provisions unambiguously indicates that the legislature intended the provisions to be jurisdictional in nature.[6] If it is unclear from the provision's wording whether the legislature intended the provision to be jurisdictional, the question must be resolved by statutory construction. *Brown v. Owens,* 674 S.W.2d 748, 750 (Tex.1984).

 In *Brown v. Owens,* the Texas Supreme Court held that the venue provision in the Texas Tort Claims Act was not jurisdictional. In doing so, the supreme court stated that a court must consider the entire Act, including the caption of the venue provision, the wording of the venue provision, and the Act as a whole. *Id.*

---

**5.** Subchapter B, Tex.Civ.Prac. & Rem.Code Ann. §§ 15.011–.017 (West 1986). Under the predecessor of the current venue statute, mandatory and permissive exceptions to the general venue provision were not distinguished; courts interpreted the exceptions to be either mandatory or permissive. *See* Act of June 17, 1983, 68th Leg., R.S., ch. 385, 1983 Tex.Gen.Laws 2119 (Tex.Rev. Civ.Stat.Ann. art. 1995, since repealed). In grouping the venue exceptions under the headings "Mandatory Venue" and "Permissive Venue" in subchapters B and C, respectively, the legislature reaffirmed some judicial interpretations while abandoning others. *Southern Pac. Transp. Co. v. Harlow,* 729 S.W.2d 946, 949 (Tex. App.—Corpus Christi 1987, writ denied *sub nom. Port Terminal R.R. Ass'n v. Harlow,* 745 S.W.2d 320 (Tex.1988)); 72 Tex.Jur.3d *Venue* § 10 (1990).

**6.** *See, e.g., Calvert v. Hall,* 514 S.W.2d 778, 779 (Tex.Civ.App.—Austin 1974, writ dism'd) (holding jurisdictional Texas Revised Civil Statutes Annotated articles 7057b and 1.05, which provided that suits to determine liability of inheritance taxes shall be brought "in any court of competent jurisdiction in Travis County, Texas, *and none other*") (emphasis added); *Morrow v. State,* 509 S.W.2d 726, 727 (Tex.Civ.App.—Austin 1974, no writ) (holding jurisdictional Texas Revised Civil Statutes Annotated article 1.04, which provided that "[v]enue *and jurisdiction* of all [such] suits ... is hereby conferred upon the courts of Travis County") (emphasis added).

The whistleblower special venue provision states that "[a] public employee may sue under this chapter in a district court of the county in which the employee resides or in a district court of Travis County." Tex. Gov't Code Ann. § 554.007 (West 1994). The section-specific portion of the legislative bill analysis does not state the purpose of the venue provision. However, the caption of the section in which the venue provision appeared in the original Act read: "REMEDY; BURDEN OF PROOF; VENUE." [7]

Appellees, however, contend that a Texas Supreme Court decision and a decision from this Court indicate that the whistleblower provision is jurisdictional. Appellees rely upon *Mingus v. Wadley*, 115 Tex. 551, 285 S.W. 1084 (1926) and *Carter v. Dean*, 660 S.W.2d 866 (Tex.App.—Austin 1983, no writ). In *Mingus v. Wadley*, the supreme court held that the two venue provisions in the Workmen's Compensation Act were jurisdictional. *Mingus*, 285 S.W. at 1087–88 (construing Workmen's Compensation Law,[8] 35th Leg., R.S., ch. 103, §§ 5, 5a, 1917 Tex.Gen. Laws 269, 283–84, since repealed). The supreme court recognized that a suit under the Workers' Compensation Act "of necessity involves the fact of the accident, the issue of the injury, and the wages of the claimant; all of which may be established with less expense, trouble, and delay in the county where the injury occurred than in any other county." *Id.* at 1087. The supreme court also noted that construing the provision as jurisdictional was consistent with the general rule "that where a statute creates a right and provides a remedy for its enforcement, the remedy is exclusive, and where it confers jurisdiction upon a particular court, that jurisdiction is exclusive." *Id.* at 1088. In *Carter v. Dean*, this Court followed *Mingus*, holding that section 11.67 of the Texas Alcoholic Beverage Code was jurisdictional because it "*creates a right of judicial review* and *specifies the court* wherein such review shall be conducted by a suit against the Commission." *Carter*, 660 S.W.2d at 868.

In determining whether the whistleblower provision is jurisdictional, it is helpful to compare the Whistleblower Act with other statutory causes of action that contain special venue provisions. The Workers' Compensation Act considered in *Mingus* replaced the common law cause of action of negligence for injuries in the course of employment with a set scheme of recovery available without regard to fault. *Middleton v. Texas Power & Light Co.*, 108 Tex. 96, 185 S.W. 556, 560 (1916) ("[A] fixed compensation is payable to [the employee] upon the mere happening of any injury in the course of the employment, or to his beneficiaries in the event of his death from the injury, without reference to any negligence on the part of the employer or his servants, and without regard to defenses available to the employer at common law."). *Mingus* held that the venue provision in the Workers' Compensation Act was jurisdictional. Venue provisions in statutes providing for judicial review of the orders and decisions of administrative agencies have also been held to be jurisdictional. *See, e.g., Carter*, 660 S.W.2d at 869; *State v. Novall, Inc.*, 770 S.W.2d 589, 590 (Tex.App.—Austin 1989, writ denied) (construing Natural Resources Code § 85.241, which provides a cause of action for persons "affected by the conservation laws of this state or orders of the [Railroad Commission] relating to oil or gas" to be jurisdictional).

Venue provisions in other statutory causes of action have been held not to be jurisdictional. The Tort Claims Act, at issue in *Brown*, enabled individuals to bring recognized common law causes of action against units of government by abrogating sovereign

7. Act of June 19, 1983, 68th Leg., R.S., ch. 832, § 3, 1983 Tex.Gen.Laws 4751, 4752. While the caption of the venue provision now reads "Where Suit Brought," this heading was added as part of the nonsubstantive codification of the Whistleblower Act into the Government Code. Act of May 22, 1993, 73d Leg., R.S., ch. 268, § 47, 1993 Tex.Gen.Laws 583, 986.

8. The title of the Act was later changed to the gender-neutral form, Workers' Compensation Act, which we shall use throughout the balance of the opinion.

immunity. *Brown*, 674 S.W.2d at 750 ("The Texas Tort Claims Act was enacted to abolish governmental immunity in certain instances and to grant permission to all claimants to bring suit against the State of Texas for all claims arising under the Act."). The Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Com.Code Ann. §§ 17.41–.63 (West 1987 & Supp.1994) (hereinafter "DTPA"), created a new statutory cause of action, though similar to common law claims for fraud and breach of warranty. *Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex. 1980). Like the Tort Claims Act, courts have construed the DTPA venue provision as permissive, and thus not jurisdictional. *See Hendrick v. McMorrow*, 852 S.W.2d 22, 24 (Tex.App.—Beaumont 1993, no writ); *Portland Sav. & Loan Ass'n v. Bevill, Bresler & Schulman Gov't Sec., Inc.*, 619 S.W.2d 241, 246 (Tex.Civ.App.—Corpus Christi 1981, no writ).

We conclude that the Whistleblower Act is more akin to the DTPA and the Tort Claims Act than the Workers' Compensation Act or statutes permitting suits for judicial review of agency decisions. The Whistleblower Act abrogates sovereign immunity as does the Tort Claims Act, and in addition supersedes the employment-at-will doctrine. This abrogation enables government employees, when terminated for reporting illegal activities of their employers, to file suit against their employers. Additionally, like the DTPA, the Whistleblower Act *creates* a new cause of action. Unlike the Workers' Compensation Act, the Whistleblower Act neither *replaces* a pre-existing common law cause of action, nor provides for a suit for judicial review of an agency action.

Accordingly, we hold that the whistleblower provision is not jurisdictional. Our conclusion also follows from applying the analysis of *Brown v. Owens*. As in *Brown*, the caption labels the whistleblower provision as a *venue* provision; the caption does not mention

tion jurisdiction. Furthermore, the wording of the venue provision does not indicate that the legislature intended the provision to be jurisdictional in nature.

**Is the Whistleblower Provision Mandatory or Permissive?**

■ Having determined that the whistleblower provision is not jurisdictional, we now turn to the question of whether the whistleblower provision is a mandatory or permissive venue provision. The fact that the whistleblower provision is a *special* venue provision does not indicate that it is mandatory. Sections of the venue statute in the Civil Practice and Remedies Code incorporating special venue provisions appear under both the headings "Mandatory Venue" and "Permissive Venue."[9]

The County contends that we should construe the whistleblower special venue provision as permissive because it uses the term "may." We recognize that "courts have repeatedly distinguished between the mandatory language of 'shall' or 'must' in a venue provision and the permissive language of 'may' in such provision." *Portland Sav. & Loan Ass'n*, 619 S.W.2d at 246.

On the other hand, this Court has stated that "[i]n determining whether a particular usage is mandatory or permissive, the entire Act should be considered, including the object and nature of the Act, and also consequences of either interpretation." *Ramirez v. State*, 550 S.W.2d 121, 124 (Tex.Civ.App.—Austin 1977, no writ) (holding that a statute which provided that suits for repayment of student loans "shall" be instituted in specific courts was a mandatory venue provision). Accordingly, we will examine the purpose of the Whistleblower Act.

The Whistleblower Act provides that its purpose is "the protection of public employees who report a violation of law." Act of June 19, 1983, 68th Leg., R.S., ch. 832, 1983 Tex.Gen.Laws 4751, 4751 (Tex.Rev.Civ.Stat.

---

9. Section 15.016, titled "Other Mandatory Venue," states, "An action governed by any other statute prescribing *mandatory* venue shall be brought in the county required by that statute."

Section 15.038, titled "Other Permissive Venue," states, "An action governed by any other statute prescribing permissive venue may be brought in the county allowed by that statute."

Ann. art. 6252–16a, since repealed). This Court has further stated that "the statute as a whole evidences two legislative purposes: (1) to protect public employees from retaliation by their employer when, in good faith, employees report a violation of law, and (2) in consequence, to secure lawful conduct on the part of those who direct and conduct the affairs of public bodies." *Texas Dep't of Human Servs. v. Green,* 855 S.W.2d 136, 142 (Tex.App.—Austin 1993, writ denied) (citing *Travis County v. Colunga,* 753 S.W.2d 716, 718–19 (Tex.App.—Austin 1988, writ denied)); *see also Castaneda v. Texas Dep't of Agric.,* 831 S.W.2d 501, 503 (Tex.App.—Corpus Christi 1992, writ denied) (noting that because the purpose of the Whistleblower Act is to protect those who inform authorities of their employers' wrongdoing, the Act must be construed "liberally, and in accordance with its remedial purpose").

It is significant that during the same legislative session that the Whistleblower Act was passed, the legislature was involved in an extensive amendment of the general venue statute. The former venue statute's "dominant purpose" was "to give a person who has been sued the right to defend such suit in the county of his domicile." *City of Mineral Wells v. McDonald,* 141 Tex. 113, 170 S.W.2d 466, 468 (1943). The general venue statute was amended, however, to include also "the county in which all or part of the cause of action accrued." Tex.Civ.Prac. & Rem.Code Ann. § 15.001 (West 1986). In doing so, the legislature resisted pressure to adopt as a venue option the county of the *plaintiff's residence. See* Dan R. Price, *New Texas Venue Statute: Legislative History,* 15 St. Mary's L.J. 855, 869–71 (1984); Senator Kent Caperton, Alan Schoenbaum & Art Anderson, *Anatomy of the Venue Bill,* 47 Tex.B.J. 244 (1984).

With this legislative history in mind, we consider it significant that in the special venue provision of the Whistleblower Act, the legislature chose to adopt the county of the plaintiff's (employee's) residence as a proper venue. We also regard as significant the inclusion of Travis County as a venue choice, which in effect functions as a safe-harbor venue provision. Were we to construe this special venue provision as only permissive, it would create the anomaly that county employees would be the only government employees deprived of these venue choices; mandatory venue would only be proper in the defendant-county.[10] Given that one of the purposes of the Whistleblower Act is to protect government employees from retaliation after reporting their employers' violations of the law, we conclude that the legislature did not intend to penalize county employees by depriving them of the special venue provision of the Whistleblower Act. Accordingly, we hold that the special venue provision of the Whistleblower Act is mandatory.

■■■ We thus have a conflict between two mandatory venue provisions. The general scheme of the venue statute is that plaintiffs may choose between two *proper* venues. *See Wilson,* 886 S.W.2d at 259–61. We conclude the trial court properly overruled the County's motion to transfer since this cause was properly filed in Travis County, one of the mandatory venue choices under the Whistleblower Act. The County's first point of error is overruled.

### Court's Charge

In its second, third, sixth, and seventh points of error, the County contends that the trial court erred in denying proper instructions concerning the definition of certain terms from the Whistleblower Act in the court's charge, and also challenges the sufficiency of the evidence to support the jury's findings on certain issues. The Act provides:

> A state agency or local government may not suspend or terminate the employment of or discriminate against a public employee who in good faith reports a violation of law to an appropriate law enforcement authority.

---

10. We are authorized to presume that, in enacting a statute, the Legislature intended "a just and reasonable result." Tex. Gov't Code Ann.

§ 311.021(3) (West 1988); *West Anderson Plaza v. Feyznia,* 876 S.W.2d 528, 532 (Tex.App.—Austin 1994, no writ h.).

Tex. Gov't Code Ann. § 554.002 (West 1994). The County submitted instructions at trial which the trial court refused. The County complains of this refusal, arguing both that the trial court abused its discretion in submitting certain instructions to the jury and that there was insufficient evidence to support the jury's verdict.

*A. Good–Faith Instruction*

In its second point of error, the County argues that the trial court improperly denied a proper instruction on good faith, and thus permitted the jury to disregard the unreasonable conduct and venal motivation of the appellees in reporting the alleged illegal conduct under the Whistleblower Act. At trial, the County requested an instruction defining "good faith," which the trial court rejected.[11]

■ Under the Texas Rules of Civil Procedure, a trial court is required to submit explanatory instructions and definitions that will assist the jury in rendering a just and fair verdict. Tex.R.Civ.P. 277; *Brewer v. Dowling,* 862 S.W.2d 156, 158 (Tex.App.— Fort Worth 1993, writ denied). A trial court's refusal to submit requested instructions will not be reversed on appeal unless the court abused its discretion. *Magro v. Ragsdale Bros., Inc.,* 721 S.W.2d 832, 836 (Tex.1986).

The County urges us to adopt a definition of good faith that is similar to that used in defamation law, and which would provide protection only in instances where the employee acts without malice or spiteful motivation. *See Hurlbut v. Gulf Atl. Life Ins. Co.,* 749 S.W.2d 762, 768 (Tex.1987) (discussing how conditional privileges may be lost if malice motivates the defendant's actions). The County bolsters its argument by relying on a definition of good faith that was suggested in

*Winters v. Houston Chronicle Publishing Co.,* 795 S.W.2d 723, 732 (Tex.1990) (Doggett, J., concurring). This reliance is misplaced, however, because *Winters* presented the issue of whether a new cause of action should be created under the common law for private employees who are terminated in retaliation for reporting violations by their superiors; it did not involve the statutory provisions of the Whistleblower Act.

■ Appellees respond that claims brought under the Whistleblower Act have not involved such expansive definitions of "good faith," and that the trial court's good-faith instruction is consistent with prior appellate interpretations of the term. We agree. This Court previously has found that the *focus* of the good-faith requirement is the employee's *belief* that the reported conduct violates the law, not the employee's *motive* for reporting the conduct. *Green,* 855 S.W.2d at 151. Therefore, the necessary inquiry involves the objective reasonableness of the employee's belief, and not the employee's subjective motivation in reporting the conduct. *Id.* In examining the County's proposed jury instruction, we conclude that it emphasized appellees' subjective motivation in a way unwarranted under present case law. The trial court patterned its instruction after instructions used in previous whistleblower cases, and thus did not abuse its discretion in denying the County's instruction. *See City of Ingleside v. Kneuper,* 768 S.W.2d 451, 453 (Tex.App.—Austin 1989, writ denied). The County's second point of error is overruled.

■ The County next argues that the trial court erred in refusing to grant a new trial because there was insufficient evidence that the appellees' conduct in making the report was objectively reasonable. When re-

---

11. The County's requested definition provided: "Made in good faith" means (1) that the employee undertook to report the activities in the workplace in good faith rather than as a result of some less admirable motive such as malice, spite, jealousy, or personal gain *and* (2) the employee had reasonable cause to believe that the activities reported were a violation of law.

The trial court refused to adopt this definition and instead instructed the jury:
"Good faith" means honesty in fact in the conduct concerned. A report of a violation of law may be in good faith even though it is incorrect, as long as the belief is not unreasonable.

viewing a jury verdict to determine the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *see also Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986). *See generally* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence"*, 69 Tex.L.Rev. 515 (1991).

■ In the instant cause, both appellees testified that they became aware of certain questionable activities occurring in the sheriff's office. Hart testified that a sergeant in the office informed him that he had lost all respect for the sheriff, but then refused to discuss the matter any further. Hart testified he spoke with the office deputies who explained that the sheriff's department owned some property which had been transferred to Sheriff Callahan from a local law firm. The law firm allegedly was having financial difficulties at that time, and Hart became concerned because the property was transferred to Callahan *personally* in what appeared to be an absolute conveyance, rather than as mere security for bail bonds. At approximately the same time, Hart discovered that a deputy in the sheriff's office was about to sell some guns from the evidence room illegally. When he approached the deputy to question him, the deputy informed him that the sheriff had authorized the sale. Hart attempted to discuss the illegal sale with Sheriff Callahan, but the chief deputy informed him that the sheriff was handling the problem. The sheriff relieved Hart of his supervisory duties the following day. Hart then discussed with Williams the gun sale and the deed of property to the sheriff.

Hart stated at trial that he believed that the sheriff's office had taken the property in order to sell it to pay off a judgment against the law firm in question, and that this action harmed a local bank, which had also obtained a judgment against the law firm. He report-

ed his suspicions to Mike Cross, the chief investigator in the Wichita County District Attorney's office, after Hart and Williams concluded that it would be the best course of action. Hart approached Cross about the deed because he believed that the investigator would be objective in researching whether the suspicions concerning the deed were justified. Williams testified that he consulted with FBI agent Lee Hale because there were bankruptcy proceedings and tax liens against some members of the law firm that had conveyed the property, and he was worried that they were "hiding the property" by transferring it to the sheriff.

■ Reviewing the testimony presented at trial, we conclude that the evidence was sufficient to support the jury's finding that the appellees acted reasonably. Nevertheless, the County urges us to hold appellees to a higher standard of conduct because they are law enforcement officers. We decline to adopt a higher standard for law enforcement officers since the Whistleblower Act itself makes no such distinction. Appellees investigated the suspicious activities and attempted to obtain outside advice during their investigation, and we therefore refuse to hold as a matter of law that their conduct was objectively unreasonable. We overrule the County's third point of error.

## B. Violation of Law

■ In its sixth point of error, the County contends that the trial court erred in refusing a jury instruction that would have required that an actual violation of law occur in order for appellees to receive the protection of the Whistleblower Act. The trial court's instruction asked the jury to determine whether the plaintiffs were terminated for reporting conduct that the plaintiffs "believed to be a violation of law." The County submitted an instruction that required the jury to find an *actual* violation of law, which the trial court denied. The County argues that the statute's express language compels this instruction, and that a court must give a statute a literal interpretation when its word-

ing is unambiguous. *Mathews Constr. Co., Inc. v. Jasper Hous. Constr. Co.*, 528 S.W.2d 323, 326 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.).

Appellees respond that the County ignores previous cases that have provided a strong rationale for not requiring an actual violation before a whistleblower can receive the protection of the statute. In *Lastor v. City of Hearne*, 810 S.W.2d 742 (Tex.App.—Waco 1991, writ denied), the Waco Court of Appeals argued that the good-faith provision of the statute is meaningless if it covers only situations where an actual violation of the law occurs. The court reasoned that the good-faith requirement can be given effect only if it protects employees who report what they *believe* to be a violation of law, even if it is subsequently determined that there was no actual violation. *Id.* at 744.[12] We have previously adopted the *Lastor* conclusion that an actual violation of law is not required. *Green*, 855 S.W.2d at 150. The County offers no persuasive reason to reject that conclusion now, and we therefore overrule the County's point of error number six.

## C. Appropriate Legal Authority

■ The County's seventh point of error only concerns Williams. The County attacks the factual and legal sufficiency of the evidence to support the jury's finding that Williams reported a violation to an appropriate law enforcement authority. In deciding a no-evidence point, we must consider only the evidence and inferences tending to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 593 (Tex.1986), *cert. denied*, 498 U.S. 847, 111 S.Ct. 135, 112 L.Ed.2d 102 (1990). When reviewing a jury verdict to determine the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if it is so

contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain*, 709 S.W.2d at 176.

■ The evidence at trial indicated that Williams was present in the room when Hart and Cross were discussing the allegations. The County argues that Cross did not recall whether Williams said anything during the meeting, and thus contends that Williams cannot obtain the protection of the Whistleblower Act for any report that Hart may have made on Williams' behalf. It is clear from all of the testimony at trial that Hart and Williams acted together in initiating the investigation. Williams participated in virtually every aspect of the investigation and was terminated by Sheriff Callahan for his involvement. Williams was present in the room during discussions about the investigation. Although Williams may not have been a main participant in these discussions, we do believe that he was sufficiently involved to receive the protection of the Whistleblower Act.

Even if we were to conclude that Williams failed to make a report to Cross, the evidence was undisputed that Williams reported the possibility of criminal activity to FBI Special Agent Lee Hale. The County recognizes that Williams may have reported a violation of law to Hale, but asserts that Hale was not an "appropriate law enforcement authority" because, as a federal agent, Hale had no power or authority to investigate or enforce compliance with state law. An appropriate law enforcement authority includes "*any* public authority having the power and duty of inquiring into the lawfulness of the questioned conduct and causing its cessation if the conduct appears to be in violation of the law." *Colunga*, 753 S.W.2d at 719–20.

We agree with the County that Agent Hale lacked authority to investigate state law violations. The testimony at trial, however, in-

---

12. The appellate courts that have considered this issue have all approved of the *Lastor* approach. *See Texas Dep't of Human Servs. v. Hinds*, 860 S.W.2d 893, 897 (Tex.App.—El Paso 1993, writ granted); *Castaneda v. Texas Dep't of Agric.*, 831 S.W.2d 501, 504 (Tex.App.—Corpus Christi 1992, writ denied); *City of Houston v. Leach*, 819 S.W.2d 185, 194 (Tex.App.—Houston [14th Dist.] 1991, no writ).

dicates that Williams consulted with Hale about the possibility that federal laws had been violated. Williams testified that he approached Hale because there were tax liens and bankruptcy proceedings against some members of the law firm that had transferred the deed to Sheriff Callahan and he believed that federal violations might have occurred. Agent Hale then conveyed the information that Williams had given him to Cross, but continued to monitor the case because of the possibility that a federal issue might develop.

We hold that the evidence was legally and factually sufficient to support the jury's finding that Williams reported the violations to an appropriate authority. Given Hale's testimony that he, a trained FBI agent, believed that a federal issue might develop in the case, it was not against the great weight of the evidence for the jury to find that Hale was an appropriate law enforcement authority. The County's seventh point of error is overruled.

### Damages

*A. Future Wages*

 In its fourth point of error, the County alleges that the trial court erred in denying a proper instruction on damages by including an erroneous category in one of the jury issues: lost future *wages*. The County submitted an instruction to the trial court which requested that future *earning capacity* be used instead, and the trial court denied the motion.

The Whistleblower Act does not specify the correct measure of damages for losses

that the plaintiff may incur in the future. Tex. Gov't Code Ann. § 554.003 (West 1994).[13] The County relies on personal injury cases in urging us to require that lost earning capacity be used in assessing damages in whistleblower cases. It is well-established law in personal injury cases that the measure of damages is the diminished earning capacity of the plaintiff, not his actual lost earnings. *Missouri–Kan.–Tex. R.R. v. Alvarez,* 703 S.W.2d 367, 372 (Tex.App.—Austin 1986, writ ref'd n.r.e.). In *Texas Department of Human Services. v. Hinds,* 860 S.W.2d 893, 900–01 (Tex.App.—El Paso 1993, writ granted), the court of appeals suggested that "future earning capacity" is the appropriate measure of damages in cases under the Whistleblower Act. The County argues that its proposed instruction reflects the one used in *Kneuper,* 768 S.W.2d at 454, and that we therefore should hold that "future earning capacity" is the correct method for calculating damages in whistleblower cases.

No case, however, has addressed whether "future earning capacity" is the *only* appropriate method for determining damages. The use of lost wages as a measure of damages has been expressly approved in at least one other category of cases: those brought under the Workers' Compensation statute for wrongful termination for filing a workers' compensation claim. Act of May 7, 1971, 62d Leg., R.S., ch. 115, 1971 Tex.Gen.Laws 884, 884–85 (Tex.Rev.Civ.Stat.Ann. art. 8307c, since repealed). In *Carnation Co. v. Borner,* 610 S.W.2d 450, 454 (Tex.1980), the supreme court concluded that an employee may recover for loss of wages in the future if those wages are ascertainable with reasonable certainty. The court found that the statutory

---

**13.** Section 554.003 specifies the types of remedies that a plaintiff can recover for a violation of the Whistleblower Act:

 (a) A public employee whose employment is suspended or terminated or who is discriminated against in violation of Section 554.002 is entitled to sue for:
 (1) injunctive relief;
 (2) actual damages;
 (3) exemplary damages;
 (4) court costs; and
 (5) reasonable attorney fees.

 (b) In addition to relief under Subsection (a), a public employee whose employment is suspended or terminated in violation of this chapter is entitled to:
 (1) reinstatement to the employee's former position;
 (2) compensation for wages lost during the period of suspension or termination; and
 (3) reinstatement of fringe benefits and seniority rights lost because of the suspension or termination.

language of "reasonable damages" provided no restriction on the type of damages that could be recovered. *Id.* Appellees argue that "reasonable damages" is comparable to the damage provisions of the Whistleblower Act in that neither limits the "actual" or "reasonable" damages available to the plaintiff to any specific elements of damages. Tex. Gov't Code Ann. § 554.003 (West 1994).

 Citing the language of the statute, the County responds that section 554.003(b) itemizes the elements of compensation that an employee who has been wrongfully terminated can recover, and since "front pay" is not included in this itemized list, plaintiffs cannot recover for loss of *future wages.* The language of the Act provides that the elements under section 554.003(b) describe compensation that the plaintiff is entitled to *in addition* to the relief provided for in section 554.003(a). Tex. Gov't Code Ann. § 554.003 (West 1994); *see also Kneuper,* 768 S.W.2d at 457–58. We do not agree that the statute precludes recovery for lost future wages. In *Green,* we approved the submission of an instruction that was patterned after the one used in cases brought under the Workers' Compensation Act. *Green,* 855 S.W.2d at 150. Because the jury issue submitted in the instant cause followed the practice under the Workers' Compensation Act, we find no error in a jury instruction that uses "lost wages" instead of "lost future earning capacity" as the measure of future damages.[14]

The County also challenges the legal and factual sufficiency of the evidence to support appellees' recovery of future lost wages. In deciding a no-evidence point, we must consider only the evidence and inferences tending to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. *Alm,* 717 S.W.2d at 593. If any

probative evidence supports the finding, we must uphold the finding and overrule the point of error. *In re King's Estate,* 244 S.W.2d at 661; *Green,* 855 S.W.2d at 146. If we conclude that the finding is supported by legally sufficient evidence, we must then determine whether the evidence is factually sufficient. In doing so, we must consider and weigh all the evidence and should uphold the jury finding unless it is so against the great weight of the evidence as to be manifestly unjust or erroneous. *Pool,* 715 S.W.2d at 635. We are not free to substitute our judgment for that of the jury merely because we may believe that a different result may be more reasonable. *Id.* at 634.

The County's principal contention is that appellees are not entitled to recover future wages because each failed to offer evidence of a diminution in his ability to work after his termination. At trial, both appellees testified that they had not applied for law enforcement positions in Wichita and surrounding counties because they believed they would not be hired. Hart stated that his belief was based on "the coverage of my firing, being disgruntled, and now they know I filed a lawsuit and I just don't ... think I'd be hired." Hart further explained that his experience in law enforcement led him to believe that law enforcement agencies comprise a brotherhood "that stick together," and that during his term as operations chief of the sheriff's department, the department had never hired an applicant who had been terminated from another law enforcement agency.

Williams testified that his failure to apply for other jobs in law enforcement was predicated on his belief that "when you're fired from the sheriff's department, and you turn around and sue him, there's not much chance you're going to get a job in law enforce-

---

14. We observe that several personal injury cases have noted that lost wages are evidence of loss of earning capacity. *See McIver v. Gloria,* 140 Tex. 566, 169 S.W.2d 710, 712 (1943) (describing lost wages as a measure of lost earning capacity); *Springer v. Baggs,* 500 S.W.2d 541, 544–45 (Tex. Civ.App.—Texarkana 1973, writ ref'd n.r.e.) (stating that lost future earnings is only one of many methods to show loss of earning capacity); *Grey-*

*hound Lines, Inc. v. Craig,* 430 S.W.2d 573, 575 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e) (noting that the amount of earnings lost in the future is evidence of diminished earning capacity). Since capacity to earn has generally been the *broader* damage submission, it is difficult to see how the County could be harmed by the submission of the *narrower* damage element, i.e., lost wages.

ment." Based on his experience in law enforcement, Williams contended that the termination was a black mark on his record that would make it very difficult for him to obtain employment with another law enforcement agency. In addition, Roger Crampton, an attorney in Wichita County, testified that it is difficult to do business in Wichita County when the "powers that be in the County" are upset with you.

■ The County's expert witness, Terri McCaslin, testified that there were numerous law enforcement jobs available in the Wichita County area, and indicated that, in her opinion, appellees could have obtained other law enforcement positions. The County argues that appellees offered no experts to corroborate their opinions, and therefore the evidence was insufficient to support the award. The opinions of experts are not conclusive on the jury, and a jury is free to accept lay testimony over that of experts. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). In the instant cause, the jury apparently accepted the appellees' testimony and rejected McCaslin's opinion. We hold that the testimony of Hart, Williams, and Crampton constituted factually and legally sufficient evidence on the issue of future wage loss, and overrule the County's fourth point of error.

### B. Mental Anguish

■ In its fifth point of error, the County complains that there was no evidence or insufficient evidence to support the jury's answers to questions 3(c) and 3(d), which concerned damages for past and future mental anguish. A plaintiff must show more than mere worry, disappointment, anger, resentment, or embarrassment in order to prove mental anguish. *Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 85 (Tex.App.—El Paso 1992, no writ); *Kneuper*, 768 S.W.2d at 460. In *Worsham*, the court of appeals concluded that mental anguish "includes mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or

public humiliation." *Worsham*, 831 S.W.2d at 85–86.

■ In the present case, appellee Hart testified that he missed his job; that he no longer felt excitement in the type of work he did; that his life was less focused than before his termination; and that he has friends in the sheriff's department who no longer speak to him because they fear disciplinary actions will be instituted against them. Hart described his depression as "I just don't feel like doing anything, just coming home and sitting down." Hart also testified about the effect on him of the media publicity surrounding the case:

Q: Mr. Hart, do people in the community come up and talk to you about the fact that you have been terminated?

A: Oh, yes, sir, they have.

Q: It was publicized that you were terminated; is that correct?

A: Yes. It was in the paper.

Q: Have you been called a disgruntled employee or other names of that sort?

A: Yes, sir. I've been a disgruntled employee, an employee with a bad attitude, all kinds of things like that.

Q: That's been put in the newspaper and on the TV in Wichita Falls?

A: Yes sir.

. . . . .

Q: How has this caused you to feel knowing that you've been terminated and you've been called these names?

A: Just angered and embarrassed. I think about it every day that I just can't—I can't go back to work there. . . . I used to get up every morning just raring to go to work and now I don't. I couldn't wait until the next day when I was in law enforcement, and now I can't go back there.

Williams testified that the termination caused problems in his marriage because it

created a financial strain.[15] He also stated that he had suffered much embarrassment from the media coverage of the case because he was called a disgruntled employee. Williams also explained that, as a result of the publicity, he no longer shopped in Wichita County because people constantly approach him to comment on the termination. Williams also discussed how the termination reduced his ability to sleep from eight hours to only three or four hours a night.

We hold that the evidence presented at trial was legally and factually sufficient to support an award of past mental anguish. The evidence clearly indicates that, at a minimum, appellees suffered public humiliation and shame as a result of their termination. We also conclude that the jury could reasonably infer that the appellees would continue to suffer mental anguish in the future. The County relies on *Kneuper* to support its contention that there is no evidence to support the jury's award. In *Kneuper*, we concluded that the record was devoid of any evidence to support the issue of future mental anguish because the plaintiff had been reinstated. *Kneuper*, 768 S.W.2d at 461. Those circumstances are distinguishable from the situation presented in the instant cause. Hart and Williams have not been reinstated, nor is either one of them currently working in law enforcement. Both testified that, four years after the termination, they were still depressed and embarrassed about it. Therefore, the rationale underlying the determination in *Kneuper* is inapplicable here. We conclude that the evidence supports the jury's inference that the appellees would continue to suffer mental anguish in the future. Point of error five is overruled.

### C. Exemplary Damages

■ The County also challenges the legal and factual sufficiency of the evidence to support the jury finding that the sheriff acted with malice in terminating the appellees. To award exemplary damages under the Whistleblower Act, a jury first must find that there was malice. *Kneuper*, 768 S.W.2d at 456–57.

■ The jury instruction submitted at trial defined malice as "ill-will or evil motive, or such gross indifference to or reckless disregard of the rights of others as will amount to a willful or wanton act."[16] In its brief, the County argues that the sheriff's actions were not motivated by the spite, ill will, or evil intent necessary to show that the sheriff acted with malice in his decision to terminate. The County, however, does not challenge the possibility that the jury could have found that the sheriff acted with gross indifference to or reckless disregard of the rights of the appellees. By failing to challenge the jury's finding under the complete definition used by the trial court, we conclude that the County has waived its eighth point of error.

If we were to address this point, however, we would conclude that the evidence was sufficient to support the jury's finding that the sheriff's decision to terminate was motivated by malice. Appellees offered evidence at trial that the chief deputy wrote on each appellee's personnel file that he was being terminated because he "initiated an investigation against the sheriff which allegations never happen [sic]." Cross, the District Attorney's investigator, testified that Sheriff Callahan demanded the identity of the complainants during their meeting to discuss the allegations. When the appellees' names were revealed, Cross testified that the sheriff's response was "they had seen their last day in the sheriff's office." Sheriff Callahan never attempted to discuss with either Hart or Williams their reasons for initiating the investigation. Hart was terminated the same day Callahan received the information

---

15. Williams and his wife eventually divorced. Although he attributed some of the blame for the divorce to his termination, he did admit that he and his wife were experiencing marital difficulties before the termination occurred.

16. The court defined "wanton" as "undisciplined, unruly, marked by arrogant recklessness of justice, feelings of others, or the like; willful and malicious."

from Cross, and Williams' termination occurred two days later.

The County's witnesses offered a different version of the events in question. District Attorney Barry Macha testified that the sheriff requested his opinion regarding whether grounds existed to terminate the appellees. Sheriff Callahan testified that he fired Hart because of his disloyalty to the sheriff and his inability to get along with co-workers. The stated reasons for Williams' termination were his failure to supervise personnel, his inability to function with his co-workers, and his disloyalty to the sheriff. Judge Juanita Pavlick, a former attorney with the District Attorney's Office, testified that she met with Sheriff Callahan when she became aware of the possibility of a whistle-blower claim, and that she advised him during the meeting that she did not believe he had violated the Act.

The testimony offered at trial concerning the circumstances under which the appellees were fired clearly conflicts. We are mindful, however, that a jury is permitted to believe some witnesses and disbelieve others. *McGalliard,* 722 S.W.2d at 697. Cross' testimony provides some evidence to support the jury's verdict. Under the factual sufficiency standard articulated in *Pool,* the finding of the jury was not so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool,* 715 S.W.2d at 635.

## County's Liability for Acts of the Sheriff

In its ninth point of error, the County challenges its liability for the wrongful acts of the sheriff because he is an independently elected official whose actions the governing body of the County is prohibited from interfering with or controlling. The crux of the County's argument is that the governmental body of a county is the commissioners court, and therefore, since appellees were employed by an independently elected sheriff, the County is not responsible for the appellees' termination in violation of the Whistleblower Act.

The Whistleblower Act prohibits a local government from terminating a public employee who reports a violation in good faith. Tex. Gov't Code Ann. § 554.002 (West 1994). A public employee is one "who, for compensation, performs services for a state or local governmental body under a written or oral contract." Tex. Gov't Code Ann. § 554.001(3) (West 1994). The Act specifies that "local government" includes a county, but does not define what offices constitute a county. Tex. Gov't Code Ann. § 554.001(2)(A) (West 1994). The County asserts that we should adopt the definition of "local government body" that is recognized under the Open Records Act, and conclude that the local government body under the Whistleblower Act is *only* the county commissioners court. Tex. Gov't Code Ann. § 552.003(a)(2) (West 1994). The County further argues that it should not be held vicariously liable under a theory of *responde-at superior* for the acts of Sheriff Callahan because it had no authority to control those actions.

No case has addressed the issue of what governmental offices constitute the county for purposes of the Whistleblower Act. In *Renken v. Harris County,* 808 S.W.2d 222, 226 (Tex.App.—Houston [14th Dist.] 1991, no writ), the court of appeals held that a commissioners court has no authority to reinstate an employee who has been terminated from his job in an elected official's office. The County requests that we analogize the present cause to *Renken* and conclude that the County is not responsible for the sheriff's actions. *Renken,* however, did not address the issue presented here regarding whether an elected county official can be considered the county for purposes of the Whistleblower Act.

The appellees respond that the County has misconstrued the use of "local government body," and that the county as whole, including the sheriff, is the government body. Statutory support for the appellees' proposition is found in the Texas Local Government Code. The heading of Title Three of the Code is "Organization of County Government," and Subtitle B, which includes both the commissioners court and the sheriff, is

titled "Commissioners Court and County Officers." *See* Tex.Loc.Gov't Code Ann. §§ 81.001–.043 & 85.001–.023 (West 1988 & Supp.1994). It is apparent from the statutes organizing counties that a sheriff was intended to be included as an integral part of county government. *See id.*

 The appellees argue that a sheriff should be regarded as a part of county government. In *County of Brazoria v. Radtke*, 566 S.W.2d 326, 328–29 (Tex.Civ. App.—Beaumont 1978, writ ref'd n.r.e.), the sheriff was held not to be a unit of government separate from the county in a claim brought under the Texas Tort Claims Act. *See* Act of May 22, 1969, 61st Leg., R.S., ch. 292, 1969 Tex.Gen.Laws 874 (Tex.Rev.Civ. Stat.Ann. art. 6252–19, since repealed). In *Radtke*, Brazoria County was held liable for injuries the plaintiff sustained in an automobile accident caused by the negligent actions of a deputy sheriff. *Radtke*, 566 S.W.2d at 329. The county contended that it could not be held liable for the acts of the deputy sheriff because it did not have the legal right to control the deputy's actions. The court of appeals disagreed, finding that the general purpose of the Act precluded the definition of the sheriff as a separate unit of government from Brazoria County. *Id.* at 328. The County argues that we should distinguish *Radtke* from the situation presented here because the Tort Claims Act contained a provision which specified that the Act applied to every person in a unit of government, whether elective or appointive. We agree with the County that the Whistleblower Act contains no similar provision. The County, however, ignores the *Radtke* court's emphasis on policy in reaching its conclusion that the sheriff and Brazoria County were the same unit of government. The Beaumont court noted that the legislative intent underlying the Tort Claims Act would be thwarted if Brazoria County could be held liable only for the acts of the employees of the commissioners court. *Id.* at 329. Despite the fact that the Whistleblower Act contains no similar provision, we do not believe that the Legislature intended "county" to be construed as narrowly as the County urges us to do here.[17] In the absence of specific language to the contrary, we refuse to hold that the Whistleblower Act was intended to cover only county employees who are employed by the commissioners court. We agree with the conclusion in *Radtke* that the county as a whole constitutes the governmental unit. We hold that the sheriff is a part of the County's government when he is acting in his official capacity, and consequently the County is liable for his misdeeds.[18] We therefore overrule point of error nine.

### Constitutionality of the Whistleblower Act

In its tenth point of error, the County alleges that the Whistleblower Act is unconstitutional because it denies due process, is void for vagueness, and violates separation of powers.

 The County's due process claim arises from its perception that to hold it liable for the acts of the sheriff is to impose vicarious liability for actions over which it has no control. Having previously held that a sheriff represents the county for purposes of the Whistleblower Act, no vicarious liability is being imposed on the County, and thus no violation of due process has occurred.

 In its contention that the statute is void for vagueness, the County asserts that, because of the statute's vague prohibition, courts have been forced to construe the statute liberally. The County offers as examples

---

17. Appellees correctly argue that the County's assertion that the terms "county" and "local government" refer only to the commissioners court would exclude a large portion of the county employees in Texas from the protection of the Act since they are employed by independently elected officials.

18. Our opinion is bolstered by federal decisions. The Fifth Circuit has previously held that a county may be held liable for the acts of a county official, such as a sheriff, who has final authority over certain decisions. *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir.1980).

the appellate courts' constructions of the terms "violation of law," "appropriate law enforcement authority," and "good faith." A statute is void for vagueness if it is "incomplete, vague, indefinite and uncertain and it forbids the doing of an act which is so vague, that men of common intelligence must necessarily guess at its meaning and that such men differ as to application...." *Sanders v. State Dep't of Pub. Welfare,* 472 S.W.2d 179, 182 (Tex.Civ.App.—Corpus Christi 1971, writ dism'd). We believe, however, that the statute's remedial purpose justifies the interpretations that courts have engrafted onto the Act. As one court noted, the Act "is designed to enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing.... Accordingly, we construe this statute liberally, and in accordance with its remedial purpose." *Castaneda,* 831 S.W.2d at 503. *See Green,* 855 S.W.2d at 142. The supreme court has explained that the language of an act should not be construed so as to defeat the general purposes of the act:

> It is settled that the intention of the Legislature controls the language used in an act, and in construing such act the court is not necessarily confined to the literal meaning of the words used therein, and the intent rather than the strict letter of the act will control.

*Woods v. Littleton,* 554 S.W.2d 662, 665 (Tex. 1977) (quoting *City of Mason v. West Tex. Utils. Co.,* 150 Tex. 18, 237 S.W.2d 273, 278 (1951)). In light of the purposes underlying the Whistleblower Act, the appellate courts' various interpretations all effectuate the goals of the Act. We hold that the statute is not void for vagueness.

■ Finally, the County argues that the statute violates separation of powers because it permits taxation without representation by authorizing unelected jurors to award punitive damages against a local governmental body. In *Green,* we concluded that this argument was untenable as applied to state agencies because a plaintiff must request a legislative appropriation to collect the award-

ed damages. *Green,* 855 S.W.2d at 145. No similar requirement exists for damages awarded against local governments. Plaintiffs are required, however, to present their claims to the commissioners court to receive satisfaction of their judgments. Tex.Loc. Gov't Code Ann. § 81.043 (West 1988). Plaintiffs are expressly prohibited from satisfying their judgments by issuing a writ of execution on county property or funds. *Id.* Therefore, judgments for the appellees in this case will be satisfied only through an act of the commissioners court, and thus, we hold that there is no separation of powers violation. Because we have determined that the Whistleblower Act does not violate any constitutional mandates, we overrule the County's tenth point of error.

## CONCLUSION

Having overruled all of the County's points of error, we affirm the judgment of the trial court.

POWERS, Justice, concurring.

I disagree only with the majority's holding that the venue provision of the Whistleblower Act is not jurisdictional.

I believe there is no dispute that the Whistleblower Act creates a cause of action unknown to common law. The features of the cause of action are as follows: (1) various governmental entities are forbidden to suspend or terminate the employment of a public employee, or discriminate against him or her, when the employee "in good faith reports a violation of law to an appropriate law enforcement authority"; (2) should the governmental entity violate the prohibition, the employee "is entitled to sue for" various forms of relief specified in the Act, some of which are quite unknown at common law, provided he or she has first exhausted any grievance or appeal procedures available within the governmental entity; (3) provided further that the employee must bring the suit within ninety days from the date of the wrongful act or its discovery by the employee; and (4) venue for the suit is prescribed in the following terms:

A public employee may sue under this chapter in a district court of the county in which the employee resides or in a district court of Travis County.

Tex. Gov't Code Ann. § 554.007 (West 1994); *see generally id.* §§ 554.002–.006. I would hold that the venue specified in section 554.007 is jurisdictional within the doctrine laid down in *Mingus v. Wadley,* 115 Tex. 551, 285 S.W. 1084 (1926).

The most recent supreme court decision discussing the *Mingus* doctrine is apparently *Grounds v. Tolar,* 707 S.W.2d 889 (Tex.1986). In that opinion, the court held jurisdictional the venue specified by the legislature in suits brought under the Term Contract Non–Renewal Act, Tex.Educ.Code Ann. §§ 21.203–.207 (West Supp.1986). The Act applies to public school teachers in instances where their employer, a local school board, declines to renew the teacher's term contract of employment. The Act provides that the teacher is entitled in such instances to notice and a hearing regarding the board's decision, a right of administrative appeal to the Commissioner of Education, a decision by that officer regarding the lawfulness of the board's decision, and a right of judicial review by suit brought in a district court of Travis County. The last-named provision declares that "[e]ither party may appeal [sic] the Commissioner's decision to a district court in Travis County." Tex.Educ.Code Ann. § 21.207(b); *see generally id.* §§ 21.203–.207. Another provision, § 11.13, of the Texas Education Code prescribes venue in a Travis county district court for suits against the Commissioner generally; and the former Texas Administrative Procedure and Texas Register Act, placed venue in a Travis County district court in suits for judicial review of the final orders rendered by certain Texas administrative agencies in "contested cases" governed by that act. Tex. Educ.Code Ann. § 11.13 (West 1991); Act of April 22, 1975, 64th Leg., R.S., ch. 61, § 19, 1975 Tex.Gen.Laws 136, 146, *repealed by,* Acts of 1993, 73d Leg., R.S., ch. 268, § 46(1), 1993 Tex.Gen.Laws 986.

*Grounds* held jurisdictional the Travis County venue specified in section 21.207(b) of the Texas Education Code. Citing *Mingus,* the court in *Grounds* declared as follows:

When a cause of action is derived from a statute, the statutory provisions are mandatory and exclusive and must be complied with in all respects or the action is not maintainable, for *lack of jurisdiction.*

*Grounds,* 707 S.W.2d at 891 (emphasis added). Concerning the permissive "may" contained in the venue provision ("Either party may appeal the Commissioner's decision to a district court in Travis County"), the court declared it meant that the decision to seek judicial review was optional *"but the place of trial is jurisdictional."* *Grounds,* 707 S.W.2d at 892. As authority for this proposition, the court looked to the following passages in *Mingus:*

*Having in mind the general rule that workmen's compensation acts are to be liberally construed to effectuate their beneficial purpose, there can be no doubt that, when the legislature specified the county in which a suit to vacate an award should be filed, ... the specification was exclusive and intended to be jurisdictional.*

\* \* \* \* \* \*

Besides, in special proceedings not within the common-law jurisdiction, the court's statutory designation of the venue is mandatory and jurisdictional.

\* \* \* \* \* \*

[W]here a statute creates a right and provides a remedy for its enforcement, the remedy is exclusive, and where it confers jurisdiction upon a particular court, that jurisdiction is exclusive.

*Mingus,* 285 S.W. at 1087–88 (emphasis added).

In my view, the *Mingus* doctrine applies to the Whistleblower Act, which creates a right and cause of action that did not exist at common law, prescribes remedies for their enforcement, and specifies the venue for such actions.

*Brown v. Owens,* 674 S.W.2d 748 (Tex. 1984) is inapposite. The causes of action

brought by the plaintiffs in that suit were, indeed, "statutory" causes of action. They were, specifically, the wrongful-death and survival causes of action—the "death actions"—authorized by statute for the benefit of a decedent's surviving spouse, children, and parents in the one instance and the decedent's heirs, legal representative, and estate in the other. *See Brown,* 674 S.W.2d at 749. *The statutes authorizing such actions contain no specific venue provision. See* Act of June 19, 1975, 64th Leg., R.S., ch. 530, 1975 Tex.Gen.Laws 1381 (current version at Tex.Civ.Prac. & Rem.Code Ann. §§ 71.001–.011, 71.031 (West 1986)). These were not, therefore, the statutes construed in *Brown* and discussed in the court's opinion.

Instead, the subject of the supreme court's opinion in *Brown* was a different kind of statute entirely—a statute that did *not* create a cause of action and remedy while also prescribing a venue for such cause of action. The statute discussed in *Brown* was, instead, the Texas Tort Claims Act. Act of May 22, 1969, 61st Leg., R.S., ch. 292, 1969 Tex.Gen. Laws 874 (amended 1973, 1983) (current version at Tex.Civ.Prac. & Rem.Code Ann. §§ 101.001–.109 (West 1986)).

The Texas Tort Claims Act *removed the bar* of sovereign immunity from almost all causes of action under certain conditions and limitations, when these actions were brought against the State of Texas. In other words, the *Texas Tort Claims Act did not create any cause of action; it simply removed the bar against existing causes of action.* The causes of action affected by the Tort Claims Act exist outside and independently of that act. There is little wonder then that the *Brown* opinion omits to mention *Mingus* or any of the other decisions applying the *Mingus* doctrine.